UNITED STATES COURT OF INTERNATIONAL TRADE

Slip Op. 12-82

_____

ROGELIO SALAZAR CAVAZOS,                 :
                                         :
                    Plaintiff,           :
                                         :
         v.                              :        Before:  Richard K. Eaton, Judge
                                         :        Consolidated Court No. 09-00125
UNITED STATES,                           :
                                         :
                    Defendant.           :
                                         :
_____  :


MEMORANDUM AND ORDER

[Defendant's motion to sever and dismiss granted.]

Dated: June 14, 2012


*Debra S. Weiss*, Debra S. Weiss, Attorney at Law, for plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Saul Davis*) for defendant.


Eaton, Judge: This matter is before the court on the motion of defendant the United States, on behalf of United States Customs and Border Protection ("Customs"), to sever and dismiss for lack of subject matter jurisdiction plaintiff Rogelio Salazar Cavazos' ("plaintiff") claims challenging the denial of his North American Free Trade Agreement ("NAFTA") post-

importation duty refund claims[1] ("NAFTA Claims").  For the reasons stated below, the court

grants defendant's motion to sever and dismiss these claims.


BACKGROUND

In his complaint, plaintiff challenges Customs' assessment of tariffs on thirteen entries of

nuts from Mexico entered at the Port of Hidalgo/Pharr, Texas, between June 26, 2007 and

December 28, 2007.  In addition, he challenges Customs' denial of his NAFTA Claims covering

the same entries.  Compl. ¶ 1.

Plaintiff's entries consisted of two varieties of candied peanuts.  Compl. ¶ 9.[2]  Upon

liquidation, [3] Customs classified the merchandise under subheading 2008.11.60 of the

---

[1]  Under NAFTA, an importer may seek the refund of duties at any time within one year of importation, including after liquidation.  In relevant part, 19 U.S.C. § 1520(d) (2006) provides:

> Goods qualifying under free trade agreement rules of origin

> Notwithstanding the fact that a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to refund any excess duties (including any merchandise processing fees) paid on a good qualifying under the rules of origin set out in [19 U.S.C. § 3332], . . . for which no claim for preferential tariff treatment was made at the time of importation if the importer, within 1 year after the date of importation, files, in accordance with those regulations, a claim that includes--

> (1) a written declaration that the good qualified under the applicable rules at the time of importation;

> (2) copies of all applicable NAFTA Certificates of Origin (as defined in section 1508(b)(1) of this title), or other certificates or certifications of origin, as the case may be; and

> (3) such other documentation and information relating to the importation of the goods as the Customs Service may require.

19 U.S.C. § 1520(d) (2006).  Section 3332 was also enacted as part of NAFTA.

[2] The first eleven entries were liquidated on February 15, 2008.  The two remaining entries were liquidated on June 27, 2008.

Harmonized Tariff Schedules of the United States ("HTSUS"), as "[f]ruit, nuts and other edible

parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other

sweetening matter or spirit"

As a result of this classification, the goods were assessed a duty rate of 131.8% ad

valorem. Plaintiff filed two protests to Customs' classification of his entries, asserting that the

merchandise was more appropriately classified as "candied nuts" under HTSUS subheading

1704.90.10. The protests were denied on September 19 and October 17, 2008, respectively.[4]

Had plaintiff's protests been allowed, and the goods reclassified under subheading 1704.90.10,

the entries would have been liquidated at a rate of 40% ad valorem.

Following liquidation of the entries, but prior to denial of his protests, plaintiff filed

NAFTA Claims seeking duty-free treatment for the merchandise.[5] Compl. ¶ 61. These NAFTA

Claims were timely filed pursuant to 19 U.S.C. § 1520(d) (2006), which provides that Customs

may "reliquidate an entry to refund any excess duties . . . paid on a good qualifying" for

preferential treatment under 19 U.S.C. § 3332(a) if the importer files a claim at any time within

one year from the date of entry. Thus, the statute anticipates that NAFTA claims may be made

after liquidation.

By his NAFTA Claims, plaintiff asserted that the merchandise qualified for duty-free

entry into the United States as "originating goods" under 19 U.S.C. § 3332(a)(1)(A). Compl. ¶

---

[3] "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1 (2011).

[4] For those goods entered on June 26, 2007, plaintiff filed his protest on March 28, 2008. For the merchandise entered on December 28, 2007, plaintiff filed his protests on August 21, 2008.

[5] On June 24, 2008, plaintiff filed NAFTA Claims for the entries entered on June 26, 2007. On September 24, 2008, plaintiff filed NAFTA Claims for the entries entered on December 28, 2007.

59. Pursuant to section 3332(a)(1)(A), "originating goods" are those that are "wholly obtained or produced entirely in the territory of one or more of the NAFTA countries." 19 U.S.C. § 3332(a)(1)(A). Plaintiff maintains that his merchandise qualified as for duty-free treatment as originating goods because the peanuts used were obtained in the United States and the remaining ingredients were obtained in Mexico.[6] Compl. ¶¶ 56-58.

Following the denial of his classification protests, plaintiff's NAFTA Claims were denied on November 20, 2008 and March 11, 2009, respectively. Plaintiff did not protest the denial of his NAFTA Claims. Compl. ¶ 6. Plaintiff's Complaint challenging the denial of the classification protests and the corresponding NAFTA Claims was filed on September 1, 2010. *See generally* Compl.[7]

By its motion to sever and dismiss, defendant contends that, pursuant to 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a) (2006), plaintiff was required to protest the denial of his NAFTA Claims as a precondition to the court's jurisdiction. Accordingly, defendant contends that the court lacks jurisdiction over the NAFTA Claims because plaintiff failed to protest their denial. Def. Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 3.

---

[6] It is unclear why plaintiff did not seek NAFTA privileges upon entry of the merchandise. It may have been because he did not have the required documentation concerning the origin of the goods at that time. The Federal Circuit has found that pursuant to 19 C.F.R. §§ 181.11(a) and 181.32, "[i]n order to make a valid NAFTA claim, an importer must submit a written declaration and the appropriate Certificates of Origin." *Corrpro Co. v. United States*, 433 F.3d 1360, 1365 (Fed. Cir. 2006).

[7] At any time prior to Customs' decision on the protests and within 180 days after the date of liquidation, plaintiff could have amended his protests to include his NAFTA Claims. *See* 19 U.S.C. § 1514(c). Plaintiff chose not to do so in this case.

STANDARD OF REVIEW

Whether jurisdiction exists is a question of law for the court.  *Shah Bros., Inc. v. United States*, 35 CIT ___,  ___, 770 F. Supp. 2d 1367, 1370 (2011) (citing *Sky Techs. LLC v. SAP AG*, 576 F. 3d 1374, 1378 (Fed. Cir. 2009)).  The party seeking to invoke this Court's subject matter jurisdiction bears the burden of establishing it.  *AutoAlliance Int'l, Inc. v. United States*, 29 CIT 1082, 1088, 398 F. Supp. 2d 1326, 1332 (2005).  To meet its burden, the plaintiff must plead facts from which the court may conclude that it has subject matter jurisdiction with respect to each of its claims.  *Schick v. United States*, 31 CIT 2017, 2020, 533 F. Supp. 2d 1276, 1281 (2007) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

DISCUSSION

Plaintiff acknowledges that he did not separately protest Customs' denial of his NAFTA Claims, but argues that the court nevertheless has jurisdiction over those claims for three reasons. First, he maintains that his arguments in favor of the NAFTA Claims constitute "new grounds" in support of his claims challenging Customs' classification of the entries pursuant to 28 U.S.C. § 2638.  Second, because 19 U.S.C. § 1514(c) permits only one protest to be filed for each entry, plaintiff insists that he was precluded, and therefore excused, from filing a second protest challenging the denial of the NAFTA Claims, which concern the same entries that were the subject of his classification protests.  Finally, plaintiff claims he was excused from protesting the denial of his NAFTA Claims because the Port Director failed to mark a box in the letter denying the NAFTA Claims next to a sentence reading "the denial is protestable within 180 days of the date of this letter."  Pls.' Resp. to Def.'s Mot. Dismiss ("Pl.'s Resp.") 10.

A.      Plaintiff's NAFTA Claims Are Not New Grounds Under Section 2638

Under 28 U.S.C. § 1581(a), a prerequisite to this Court's jurisdiction over actions challenging Customs' decisions is the denial of a timely-filed protest.  *See Epoch Design LLC v. United States*, 36 CIT __, __, 810 F. Supp. 2d 1366, 1370 (2012) ("The proper, timely filing of a protest is thus a jurisdictional requirement; and, further, the denial, in whole or in part, of a protest is a precondition to the commencement of an action under 28 U.S.C. § 1581(a).") (citations omitted).  Pursuant to 28 U.S.C. § 2638, however, the court "may consider any new ground in support of [a] civil action if such new ground – (1) applies to the same merchandise that was the subject of the protest; and (2) is related to the same administrative decision listed in [19 U.S.C. § 1514] that was contested in the protest."  In other words, when a plaintiff has protested a *decision* by Customs for at least one reason, it may challenge that same decision in this Court for any other reason, even if such other reason was not raised in the protest, so long as the same merchandise is involved.

Plaintiff maintains that the court has jurisdiction over the denial of his NAFTA Claims because "[p]laintiff's assertions for duty-free treatment pursuant to a trade agreement relate to the same administrative decision that was contested in the protests, i.e., the liquidation of the covered entries determining the tariff classification and assessing the rate of duty and amount of duty chargeable."  Pl.'s Resp. 5.  Thus, plaintiff argues that, pursuant to section 2638, his NAFTA Claims constituted "new grounds" in support of his protests of Customs' classification decisions.  Based on this position, plaintiff insists that he was not required to separately protest the denial of his NAFTA Claims.

A claim constitutes new grounds for the purposes of section 2638 when it "fall[s] within the same category of decision raised by protests under 19 U.S.C. § 1514(a)."  *See Atari Caribe,*

*Inc. v. United States*, 16 CIT 588, 594, 799 F. Supp. 99, 106 (1992).  As a result, in order for the

NAFTA Claims to be considered as new grounds for the previously-filed classification protests

they must relate to the same category of decision as the protests themselves.  Thus, if Customs'

decisions to deny preferential treatment under NAFTA for plaintiff's goods are distinct from its

classification of those goods, the NAFTA Claims cannot be said to constitute new grounds for

challenging Customs' classification decisions.  In that case, plaintiff would be required to protest

the denial of the NAFTA Claims as a prerequisite to this Court's jurisdiction over the issue of

whether the merchandise qualified for the NAFTA tariff preference.[8]

---

[8] While Customs did not make a decision as to the eligibility of the merchandise for NAFTA treatment prior to the filing of plaintiff's protests, Customs' classification of plaintiff's goods did affect their eligibility for NAFTA treatment.  Customs denied plaintiff's NAFTA Claims by finding that, pursuant to 19 U.S.C. § 3332(o)(2), plaintiff's goods did not qualify as "originating goods" eligible for duty-free treatment under NAFTA because they were classified under subheading 2008.11.  Section 3332(o) exempts certain products from treatment as "originating goods" under section 3332(a)(1)(A), despite their originating within a NAFTA Country.  Pursuant to section 3332(o), if a good (1) is exported from Mexico; (2) is classified under subheading 2008.11; (3) is produced using peanuts; and (4) those peanuts are not wholly obtained in Mexico, the good will not be treated as an "originating good" for purposes of section 3332(a)(1)(A).  19 U.S.C. § 3332(o)(2).  That is, pursuant to section 3332(o), goods classified under subheading 2008.11 and exported from Mexico consisting, at least in part, of peanuts do not qualify for NAFTA privileges unless those peanuts were wholly obtained in Mexico.

Because the peanuts used in producing plaintiff's merchandise were obtained in the United States, plaintiff's entries would not qualify as "originating goods" if they were correctly classified under subheading 2008.11 as "[f]ruit, nuts and other edible parts of plants."  In other words, given Customs' classification of the entries under subheading 2008.11 and the fact that plaintiff's products contained peanuts that were not wholly obtained in Mexico, plaintiff's entries did not qualify as "originating goods" under section 3332(a).

On the other hand, if the entries were properly classified under HTSUS subheading 1704.90.10 as "candied nuts," as plaintiff asserted in his protests, section 3332(o) would not be applicable.  Were that the case, the goods would qualify for duty-free treatment as "originating goods" because all of the ingredients were obtained in either Mexico or the United States.  Hence, if the goods were reclassified in response to plaintiff's protests, the denial of the NAFTA Claims would have been erroneous.  None of this, however, changes the result here, because plaintiff was required to protest the denial of his NAFTA Claims themselves in order to confer jurisdiction on the court to grant him any appropriate relief.

In considering this case, the court is guided by the holdings in three Federal Circuit opinions. First, in *U.S. Shoe Corp. v. United States*, the Court found that a "decision" is required by Customs before a proper protest can be filed, and jurisdiction in this Court under section 1581(a) can be based on a denial of that protest. *U.S. Shoe*, 114 F.3d 1564, 1570 (Fed. Cir. 1997).

Next, in *Xerox Corp. v. United States*, the Federal Circuit found that this Court lacked jurisdiction over a plaintiff's claim for a preferential tariff rate under NAFTA where the plaintiff's claim for NAFTA preference was raised for the first time in the protest itself. The Federal Circuit held that the denial of a protest cannot confer jurisdiction on this Court unless the complaint challenges a decision Customs has made prior to the protest being filed. The Court explained that "Customs at no time expressly considered the merits of NAFTA eligibility, nor could it without a valid claim by Xerox for such eligibility. We thus hold that it did not make a protestable decision to deny Xerox NAFTA treatment in this case." *Xerox*, 423 F.3d at 1363.

In reaching its holding, the Court determined that the classification of goods and the assessment of "general" rates of duty, rather than "special" rates of duty under NAFTA, does not constitute a decision by Customs to deny NAFTA privileges when no NAFTA Claim was before Customs at the time it assessed the general rates.[9] In so holding, the Federal Circuit adopted this Court's finding that "[i]t is too much of a reach to construe Customs' decision to assess

---

[9] The HTSUS column providing for the "Rates of Duty" is divided into sub-columns 1 and 2. Column 1 governs the rate of duty to be assessed against imports originating from countries with whom the United States has normal trade relations. This column is further divided into sub-columns labeled "General" and "Special." Pursuant to General Note 2(c), if a good qualifies for NAFTA preference then it is assessed the (usually lower) rate in the "special" sub-column. An exporter can claim preferential NAFTA treatment for its entries either at the time of entry, 19 C.F.R. § 181.21, or within a year of entry, 19 U.S.C. § 1520(d). In *Xerox*, the plaintiff never made a claim for a NAFTA preference before Customs, either at or post entry. As a result, it was assessed the rate of duty from the "General" sub-column.

[General] duties as a negative decision regarding preferential NAFTA treatment." *Xerox Corp. v. United States*, 28 C.I.T. 1667, 1670 (2004) (not reported in the Federal Supplement).

Finally, in *Corrpro*, the Federal Circuit again held that this Court lacked jurisdiction over a claim for NAFTA Treatment when the plaintiff did not file a claim for NAFTA preference with Customs until after its protest was filed. As with the plaintiff in *Xerox*, the plaintiff in *Corrpro* filed a protest challenging Customs' liquidation of its entries at a "general" rate. The plaintiff had not filed a valid NAFTA Claim at the time it protested the general rate assessment. Indeed, the plaintiff did not file its NAFTA Claim with Customs until the case challenging the denial of the assessment protest was pending in this court, well beyond the expiration of the time for filing a NAFTA Claim.[10] This Court found that it had jurisdiction over the plaintiff's claim,[11] but the Federal Circuit reversed. In holding that jurisdiction was lacking under section 1581(a), the Federal Circuit found that

> the trial court's reasoning assumed that Corrpro had made a valid NAFTA claim at the time of entry, even though Corrpro had not yet raised that issue. But we cannot attribute to Customs a decision on a NAFTA claim that did not yet exist. Because Customs could not have considered and did not consider the merits of NAFTA eligibility *in the initial classification decision*, it did not make a protestable decision [with respect to NAFTA eligibility] at that time. . . . Customs could not have engaged in any sort of decision-making as to NAFTA eligibility in liquidating the goods because Corrpro had not yet raised the NAFTA issue.

*Corrpro*, 433 F.3d at 1366 (emphasis added).

---

[10] As noted, a NAFTA Claim must be filed within one year after entry. 19 U.S.C. § 1520(d).

[11] The merchandise in *Corrpro* was originally classified under a HTSUS subheading that was not eligible for a NAFTA preference. Because of this classification, the plaintiff did not file a NAFTA claim within a year of entry, but rather claimed the goods to be eligible for NAFTA preferences in its protest of Customs' classification. Subsequent to plaintiff's commencement of its action in this Court, Customs revoked its classification of plaintiff's merchandise and re-classified the merchandise. Because, as reclassified, the plaintiff's merchandise was eligible for NAFTA treatment, plaintiff filed its NAFTA claims with Customs at that time.

As noted, plaintiff insists that "[s]ince the claims set forth in Plaintiff's protests and those asserted in his pleadings [concerning the NAFTA Claims] involve the classification, rate and amount of duties chargeable" they concern the same administrative decision under section 1514(a)(2). Pl.'s Resp. 7. This argument fails, however, because it is inconsistent with *Xerox* and *Corrpro*, which both held that Customs' classification decisions at liquidation were separate from its post-liquidation decisions concerning NAFTA eligibility. In those cases, the Court found that a protest of the rate of duty assessed based on classification cannot support jurisdiction in this Court over the denial of a claim for NAFTA privileges when no NAFTA Claim was filed and no decision relating thereto was made by Customs prior to the protest. In other words, these cases stand for the proposition that Customs cannot render a protestable decision on NAFTA eligibility until a valid NAFTA Claim is submitted to Customs. Indeed, in *Xerox*, the Court expressly rejected the idea that the mere assessment of "general" rates at liquidation amounted to a protestable decision to deny preferential treatment under NAFTA, if no NAFTA Claim was filed with Customs prior to the non-preferential rate being assessed. These holdings demonstrate that Customs' NAFTA eligibility decisions are distinct from those regarding classification and assessment. *Compare* 19 U.S.C. § 1514(a)(2), *with* § 1514(a)(7).

Based on the foregoing, the only protests filed by plaintiff here did not challenge Customs' decision to deny plaintiff's NAFTA Claims because at the time Customs received plaintiff's protests he had not yet filed a valid NAFTA Claim.[12] Thus, plaintiff's failure to submit his NAFTA Claims until after he filed the classification protests demonstrates that the

---

[12] For the entries liquidated on February 15, 2008, plaintiff filed his protest on March 28, 2008. Plaintiff's NAFTA Claims covering those entries were not filed until June 24, 2008. Similarly, for those entries liquidated on June 27, 2008, plaintiff filed his protest on August 21, 2008, and his NAFTA Claims covering those entries on September 24, 2008.

protests did not relate to the category of decision found in his NAFTA Claims. *See Corrpro*, 433

F.3d at 1365 ("Corrpro did not submit the appropriate Certificates of Origin until 2002. Thus,

neither Customs' initial classification decision, made in 1999, nor its liquidation of goods, made

in 2000, could have been a decision on the merits of a valid NAFTA claim, as no valid NAFTA

claim existed at that time."). Because plaintiff failed to protest Customs' decisions on his

NAFTA Claims, the court is without jurisdiction to hear a case based on the denial of those

claims. [13]

B. Plaintiff Was Not Exempted from Filing a Protest to the NAFTA Claim Denials by the "One
Entry, One Protest" Rule

Next, plaintiff argues that, even if he were required to separately protest the denial of his

NAFTA Claims, this second protest would have been barred by the "one entry, one protest" rule

under 19 U.S.C. § 1514(c). *See* 19 U.S.C. § 1514(c) ("Only one protest may be filed for each

entry of merchandise . . . ."). Section 1514(c)(1) [14] generally prohibits multiple protests being

---

[13] Only the court's jurisdiction over plaintiff's NAFTA Claims is challenged in defendant's
motion to sever and dismiss. There is no dispute that plaintiff timely protested Customs'
decision to classify his entries under subheading 2008.11 of the HTSUS. Accordingly, plaintiff's
claims challenging Customs' classification decision are properly before the court, and survive
defendant's motion to dismiss. Although plaintiff is precluded from seeking duty-free treatment
for his entries under NAFTA, he still may be entitled to have those entries reclassified and
assessed a lower tariff rate.

[14] Section 1514(c) provides:

> Only one protest may be filed for each entry of merchandise, except that where
> the entry covers merchandise of different categories, a separate protest may be
> filed for each category. In addition, separate protests filed by different authorized
> persons with respect to any one category of merchandise, or with respect to a
> determination of origin under section 3332 of this title, that is the subject of a
> protest are deemed to be part of a single protest.

19 U.S.C. § 1514(c).

filed for the same entry of merchandise.[15]  Accordingly, "[w]here a plaintiff has invalidly filed a second protest, the court lacks jurisdiction to entertain plaintiff's claims" contained in the second protest.  *Mitel, Inc. v. United States*, 16 CIT. 4, 9, 782 F. Supp. 1567, 1571 (1992).  Plaintiff maintains that the bar on second protests covering the same entries means that any protest covering the entries in question should confer jurisdiction on this Court over any claim covering those entries, no matter when asserted.  Pl.'s Resp. 9-10.

The court is not convinced by plaintiff's contention.  Indeed, the statutory scheme anticipates and authorizes a second protest under the facts of this case.  That is, section 1514(c) explicitly permits a second protest to the denial of a NAFTA Claim.  Pursuant to the statute, "with respect to a determination of origin under [19 U.S.C. § 3332 relating to the origin of merchandise from a NAFTA Country]" concerning merchandise that is the subject of a prior protest, i.e., a protest concerning classification, a second protest is permitted, and the two protests will be "deemed to be part of a single protest."  19 U.S.C. § 1514(c).  The reason for this exception to the "one entry, one protest rule" is clear.  Without it, an importer might be required to choose between timely protesting the liquidation of its merchandise under a particular classification,[16] or relying solely upon a claim for re-liquidation under NAFTA.  This is because

---

[15] If an entry contains several different categories of merchandise, one protest is permitted for each category of merchandise.  *See* 19 U.S.C. § 1514(c); *see also N. Am. Foreign Trading Corp. v. United States,* 25 CIT 809, 813 (2001) (not reported in Federal Supplement) ("[W]hile two protests may not be filed for the same category of merchandise, 'it is clear that [the statute] permits importers to file separate protests where the entry covers merchandise of different categories.'") (citations omitted).

[16] In other cases, the choice would be between protesting NAFTA re-liquidation or other administrative decisions listed in 19 U.S.C. § 1514(a), such as the appraisal value of merchandise or the refusal of drawback privileges.

the time to protest classification could easily expire prior to the time to file a claim for re-liquidation under NAFTA pursuant to section 1520(d).

A protest of Customs' classification must be filed within 180 days of liquidation, whereas a protest of Customs' denial of a claim for re-liquidation pursuant to a NAFTA Claim under section 1520(d) must be filed within 180 days from the date of Customs' decision to deny the claim. *See* 19 U.S.C. § 1514(c)(3). A NAFTA Claim for re-liquidation can be filed anytime within one year from entry, and decided anytime thereafter. *Id.* § 1520(d) (permitting a claim for re-liquidation anytime up to one year after entry). Thus, the time limit for filing a protest to a NAFTA Claim decision could extend more than 180 days beyond liquidation, and "[t]he reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the Customs Service upon any question not involved in such reliquidation." *Id.* § 1514(d). Accordingly, without the provision permitting a second protest from the denial of NAFTA Claims, an importer would be precluded from seeking judicial review of either Customs' classification determinations or its NAFTA determinations whenever its NAFTA Claims are filed beyond 180 days from liquidation.

Therefore, under 19 U.S.C. § 1514(c), plaintiff was permitted to protest the denial of the NAFTA Claims, even though this second protest would have pertained to the same merchandise covered by the previously-filed classification protests. Because plaintiff's protests did not preclude him from filing a separate protest of his NAFTA Claims within 180 days from the denial thereof, his arguments with respect to the "one protest rule" are unconvincing, and his failure to file a second protest deprives the court of jurisdiction over these claims.

C. The Port Director's Failure to Mark the Denial Form Does Not Excuse Plaintiff From His Obligation to Protest the NAFTA Decision

Finally, contrary to plaintiff's contention, the Port Director's failure to check the box labeled "the denial is protestable within 180 days of the date of this letter" on the the NAFTA Claims denial letter does not confer jurisdiction on the court. Plaintiff asserts that he justifiably relied upon Customs' omission in not protesting the denial of his NAFTA Claims. It is a well-settled principle of sovereign immunity, however, that the United States can only be sued it if waives immunity from a particular claim. *U.S. JVC Corp. v. United States*, 22 CIT 687, 691-92, 15 F. Supp. 2d 906 (1998) (citations omitted). More importantly, any such waiver must be express, not implied. *Id.* Accordingly, statutory prerequisites for filing suit against the United States cannot be excused on grounds of waiver or estoppel. *Yancheng Baolong Biochemical Prods. Co., v. United States*, 406 F.3d 1377, 1382 (Fed. Cir. 2005) ("The Supreme Court has found that . . . '[a] waiver of the Federal government's sovereign immunity must be unequivocally expressed in statutory text' and 'will not be implied.'" (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996))). Likewise, the subject matter jurisdiction of the court may not be expanded by waiver or estoppel. *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). Thus, this ministerial omission cannot expand the scope of the United States' waiver of sovereign immunity or the Court's subject matter jurisdiction, and plaintiff's failure to file valid protests of the denial of his NAFTA Claims is not excused.

CONCLUSION and ORDER

Here, plaintiff had a clear legislatively determined path to having his NAFTA Claims heard in this Court.  Because he failed to take advantage of the statutory scheme and file a separate protest of the denial of his NAFTA Claims, the court finds that it lacks jurisdiction to hear those claims.  Accordingly, it is hereby

ORDERED that defendant's motion to sever and dismiss is granted; it is further

ORDERED that the claims set forth in paragraphs 53-65 of plaintiff's Complaint are severed and dismissed.

                                                    /s/ Richard K. Eaton
                                                    Richard K. Eaton

Dated: June 14, 2012
           New York, New York

<u>Errata</u>

*Rogelio Salazar Cavazos v. United States*, Court No. 09-00125, Slip Op. 12-82 (June 14, 2012)

Page 3, Line 9:                              Replace "40%" with "4.5%".